# GREEN v. DAVIS.

Under section 1 of chapter 1531 of our statutes, where a mortgagee of real estate seeks to foreclose his mortgage by peaceable entry and possession, his published notice must show that his possession of the mortgaged premises was taken for condition broken, and also the object of such possession.

A notice, dated November 7, 1856, merely stating that such mortgagee, on the 5th day of August, 1856, took quiet possession of the mortgaged premises by entering upon the same, and therefore claims a foreclosure of the mortgage for condition broken, is insufficient.

An unexecuted agreement by such mortgagee with two of the three mortgagors, to take the mortgaged premises in payment of the mortgage notes, is not evidence of the payment of those notes, in a suit by the mortgagee against an indorser of the notes.

A new agreement, not made or accepted in satisfaction of a former contract, is not a discharge of such former contract.

An estoppel is binding only between parties and privies.

ASSUMPSIT for $2,500, money had and received.  Plea, the general issue.  The writ was dated October 13, 1857.

The plaintiff offered in evidence two joint and several promissory notes, each dated August 5, 1854, for $958, payable to one Haywood, or order, with annual interest, signed by Horner, Hastings & Paine, and indorsed by Haywood and by the defendant, waiving demand and notice.  One was payable in one year, and the other in two, and one year's interest was indorsed on both.

The defendant proved that the notes were given for part of the purchase money of ten lots of land in Milan, N. H., and that said lots were mortgaged back to Haywood by Horner, Hastings & Paine, to secure the notes.  A copy of the mortgage deed was made part of the case.  The defendant sold and transferred the notes and mortgage to the plaintiff, about December 25, 1854, discounting as extra from the amount of the notes at that time about the sum of $189.06.  The testimony for the defendant tended to show that, soon after the first note became due, Paine and Hastings made an arrangement with the plaintiff to delay the payment of

that note till the second one became due, and that nothing should be done to foreclose the mortgage till then, in consideration of their agreement to pay the plaintiff the first year's interest due on the two notes in suit, and twelve per cent interest on the first note from the time it was payable till the second one was due; and in the fulfillment of this arrangement, Paine gave the plaintiff his two notes, dated August 5, 1855, one for $114.96, payable to the defendant, or order, on demand, with interest. At the bottom of this note is this memorandum, namely, "The above note was given for interest on the Horner, Hastings and Paine notes, for the first year's interest due on said notes." The following payments are indorsed on the back of said note : "August 4, 1857, received of David Meserve, as stumpage on timber cut by him and others, $78$\frac{88}{100}$ of the within." "October 5, 1857, received of M. Pattee $46$\frac{88}{100}$ on the within, as stumpage for timber cut on lot No. 18, range 5." The other note for $57.48, was payable like the first. A memorandum was written at the bottom of this note : "The above note is given to pay interest due, and also for time and labor and money paid out and expended at my request, and for my especial benefit ; and I hereby agree to pay the same according to the tenor thereof, and waive any and all objections thereto.

HENRY PAINE."

It appeared that the note for $114.96 was given to pay the first year's interest due on the two notes in suit, and the note for $57.48 was given for the extra interest, promised in consideration of the delay; and the plaintiff thereupon made the indorsement of interest paid on the notes sued.

The plaintiff testified that the defendant was consulted in relation to the agreement for the extension, and that he fully assented thereto ; but the defendant denied this on the stand, and the testimony of Paine and Hastings corroborated the latter. Horner and Hastings were partners in the business of manufacturing lumber, at Berlin Falls, N. H., from about the year 1854 until about the year 1856 ; and during the winter of 1854–55, in company with Paine, they did an extensive lumbering business upon the lands described in the annexed mortgage deed. Horner never personally occupied any of said lands, and never had any thing to do with the possession of them, except through his partner, Mr. Hastings. Paine and Hastings, being called as witnesses by the defendant, among other things testified in substance that, soon after the last note in suit became due, the plaintiff asked them to sign the agreement, a copy of which was made part of the case, saying that if they would do so it would save him some costs, and promised that in case the lands mentioned therein were not redeemed within a year from the commencement of his foreclosure, he would look to the land only to pay the notes in suit ; and for this consideration they signed the agreement. The plaintiff, however, denied ever having any such conversation with either of them ; and their testimony on this point was seasonably objected to as incompetent, by the counsel for the plaintiff.

These mortgaged lands were chiefly valuable for the pine and spruce timber on them ; and the defendant's testimony tended to show that when he sold and transferred the notes and mortgage to the plaintiff, the latter agreed to protect the property, and not allow any timber to be drawn from the lots without securing the pay for stumpage ; but this was contradicted by the plaintiff.

Hastings and Paine cut nearly 550,000 feet of pine and spruce timber, mostly spruce, from said lots, in the winter of 1854–55. About 120,000 feet thereof was cut by Hastings, and rolled into the Androscoggin river, and driven down to Berlin Falls, N. H., where it was manufactured or disposed of in some way by Horner and Hastings. They failed in business in 1855, and have continued irresponsible to the present time. Paine cut about 7,000 feet of pine and about 426,000 feet of spruce, and hauled it into the river Chickwallipee, where it lay until the fall of 1856, for want of a freshet to run it into the Androscoggin. Meanwhile Paine, having paid all the expenses of cutting and drawing the timber into the Chickwallipee, except about $240, with the assent of Horner and Hastings assumed the timber as his own property, and mortgaged it to secure the payment of that debt. No other incumbrance existed on this timber while it remained in Paine's possession, save the stumpage. During the high water of 1856, Paine drove the greater part of the timber into the Androscoggin, and then sold it to a Mr. Pattee for $4 per M. When the timber was put into the Chickwallipee, the draw-bill amounted to $2.37 per M, and the expense of driving it into the Androscoggin was from thirty-four to thirty-eight cents per M, leaving the stumpage at about $1.25 per M. One or two of the defendant's witnesses stated that the plaintiff was present when Paine sold this timber to Pattee, and consented to the sale ; and that Pattee, at the same time, in the plaintiff's hearing and presence, stated that he had arranged the stumpage with the plaintiff, to which the latter assented. Pattee paid off the mortgage on the timber, and paid the residue, amounting to over $900, to Mr. Paine, or for his benefit. It appeared that Paine, at that time and before then, owned other property to some extent, and was considered solvent until some time about the year 1857, when he failed, and has ever since then been insolvent.

The plaintiff stated that he had received nothing toward the timber taken from the mortgaged premises, except what is indorsed upon the note of $114.96, above described. The plaintiff also conceded that he caused to be published in the Coös County Democrat, a newspaper printed at Lancaster, N. H., in the numbers thereof dated November 12, 19, and 26, A. D. 1856, the notice, a copy of which was made a part of the case, for the purpose of foreclosing the right in equity of the said Horner, Hastings & Paine to redeem the premises. After the making of the agreement signed by Hastings and Paine, in the fall of 1856, Paine, by permission of the plaintiff, entered upon the mortgaged premises, and logged therefrom through the winter of 1856–57, agreeing to account to the plaintiff for the stumpage ; and the plaintiff was to have all the pine timber he cut, by paying as much for Paine's interest therein

as any body else.  Paine had the right to log any where he pleased
on the mortgaged premises, and under this arrangement he cut
from said lands about 80,000 feet of timber.  The defendant testi-
fied that he saw the notice of foreclosure in the newspaper about
the time it was printed, and that some time in August, 1857, the
plaintiff informed him that the foreclosure was completed, and that
the right to redeem the land had expired ; that he had relied and
acted on this information, and had given no thought or attention to
the collection of the notes sued, of the prior parties liable to pay
them, or to their property or responsibility, or to the care and pro-
tection of the lands mortgaged to secure the notes, from thence to
the present time, believing that the mortgage had been duly fore-
closed, and that the plaintiff had got his pay in full.

The defendant admitted that the plaintiff, about the same time,
inquired of him if he would not pay the amount of the plaintiff's
claim and take the deed of these lands ; but the defendant declined
to do so.

The plaintiff testified that he had not been upon said mortgaged
premises in person since he purchased the notes and mortgage of
the defendant ; but that the lands had been set down in the grand
list of Milan as his own, and that he had paid the taxes thereon
from 1856 to the present time.  Haywood and Paine testified that
they saw the publication of the foreclosure in the newspaper, not
long after it occurred, and that, during the summer or fall of 1857,
the plaintiff informed them that the mortgage was foreclosed, and
the right to redeem had expired.  It appeared, also, that neither
Horner, Hastings, Davis, Haywood, nor Paine, except as above
stated, nor any person under either of them, had ever entered upon,
occupied, claimed, or interfered with the mortgaged premises since
the last note sued became due.

The plaintiff's counsel seasonably objected to the competency of
all the evidence above detailed, respecting the foreclosure of the
mortgage ; and upon the same having been received by the court,
subject to the objection, the plaintiff conceded that the mortgaged
premises were of sufficient value to pay off the incumbrance;
whereupon a verdict for the defendant was taken, by consent of
the plaintiff, subject to the foregoing exceptions.

The agreement signed by Hastings and Paine was under seal, and
had two witnesses, and was as follows : .

"Whereas, on the 5th day of August, 1854, we, the undersigned,
by our mortgage deed of that date, did convey unto one Solomon
J. Haywood (to secure the payment of certain notes described in
said mortgage) the following described real estate : namely, lot No.
(16) sixteen, in the first range ; lots Nos. (17) seventeen and (18)
eighteen, in the second range ; lots Nos. (16) sixteen and (17) seven-
teen, in the third range ; lots Nos. (14) fourteen, (19) nineteen,
and (20) twenty, in the fourth range ; and lots Nos. (18) eighteen
and (19) nineteen, in the fifth range ; all in the second division of
lots in Milan ; and whereas the two last of the above mentioned
notes are now due, and no part of either of them has yet been paid,
now therefore be it known, that for the purpose of enabling the

said Haywood, or Daniel Green, whom we understand to have pur-
chased said notes and mortgage, and thereby become the assignee
of said mortgage, to foreclose the same, we do by these presents put
the said Green and Haywood in full, free, and quiet possession of
the above mentioned real estate ; and that we will not enter upon
the said premises for any purpose whatever, or permit others to do
so without the consent of the said Green and Haywood, until we
shall have fulfilled the condition of said mortgage.

"In witness whereof we have hereunto set our names and affixed
our seals, this 5th day of August, A. D. 1856."

The notice published by the defendant was as follows :

"FORECLOSURE OF MORTGAGE.

"Whereas Gideon A. Hastings, Henry Paine, Jones D. Horner,
of Milan and Berlin, on the 5th day of August, A. D. 1854, by
their deed of mortgage of that date, conveyed to one Solomon J.
Haywood, of Milan, in the county of Coös and State of New-
Hampshire, the following lots of land in the town of Milan, in said
county of Coös, namely, lot numbered sixteen, in range one ; lots
numbered seventeen and eighteen, in range two ; lots numbered
sixteen and seventeen, in range three ; lots numbered fourteen, nine-
teen, and twenty, in range four ; lots numbered eighteen and nine-
teen, in range five ; all in the second division of lots in said Milan,
to secure the payment of certain notes described in said mortgage
deed to said Haywood, as will appear by the record of said deed in
the Coös records, vol. 52, pp. 467, 468, and that on the 25th day of
December, 1855, said notes were sold and transferred with the said
mortgage deed to me, the subscriber, and that on the 5th day of
August, A. D. 1856, I took quiet possession of the premises, by en-
tering upon the same.   I therefore claim a foreclosure of said mort-
gage, for condition broken.

"Berlin, November 7, 1856.                    DANIEL GREEN."

The questions arising upon the case were reserved for the court
at the law term.

*Burns & Fletcher*, for the plaintiff.

*Benton & Ray*, for the defendant.

When a verdict has been taken by consent for a party, every fact
which could have been legally found from the evidence is to be as-
sumed in his favor.   *Melcher* v. *Flanders*, 40 N. H. 139.

The defendant, although not a surety, technically, perhaps, is
regarded as such in respect to the makers of the note sued ; and
any defense that would release a surety, strictly speaking, will dis-
charge the defendant.   *Parker*, C. J., in *Bank* v. *Brown*, 12 N. H.
327 ; *Clark* v. *Devlin*, 3 B. & P. 366 ; Chitty on Bills 443 ; Edwards
on Bills.

The plaintiff's agreement with Paine and Hastings, to delay pay-
ment of the first note till the second became due, and that until
then nothing should be done to foreclose the mortgage, was made

without the defendant's consent, and is a clear defense to the first note. *Watriss* v. *Pierce*, 32 N. H. 577 ; *Bank* v. *Colcord*, 13 N. H. 122; *Crosby* v. *Wyatt*, 10 N. H. 324 ; *Woodman* v. *Eastman*, 10 N. H. 359 ; Chitty on Bills, 442–443 ; Story on Notes, secs. 413, 414.

We think it released the defendant from the second note also. But for that agreement the mortgage could have been foreclosed, and possession taken of the land before the last note fell due. *Furbush* v. *Goodwin*, 29 N. H. 321. In this respect, at least, it was a diminution of the security for the notes passed to the plaintiff by the defendant.

When the plaintiff bought the notes and mortgage of the defendant, he agreed to protect the property, and not allow timber to be drawn from the mortgaged lands without securing pay for stumpage. He failed to do so, and during the winters of 1854–55 and 1856–57 allowed Paine and Hastings to cut from these lands valuable timber to the amount of about 633,000 feet, without even obtaining a cent of them for stumpage. The payments by Meserve and Pattee on the note dated August 5, 1855, for $114.96, should be applied on the last note in suit. The plaintiff, as against the defendant, had no right to indorse these sums upon demands not secured by the mortgage.

The defendant claims that a fair price for the stumpage taken by Paine and Hastings, added to the sums paid by Pattee and Meserve, will fully pay the last note sued, provided he is liable thereon at all.

It is a rule in equity that if the creditor has any security from the debtor, and he parts with it, or by his gross negligence it is lost, without communication with the surety, this will operate, at least to the value of the security, to discharge him. 1 Story Eq. 326 ; *Law* v. *East-India Co.*, 4 Ves. 824 ; *Baker* v. *Briggs*, 8 Pick. 122. And in New-Hampshire this rule obtains at law. *Bank* v. *Colcord*, 15 N. H. 122. Davis never assented to such a disposition of the timber, and is entitled to have the value of the stumpage applied on the last note indorsed by him.

The plaintiff's agreement with Paine and Hastings, that if they signed the agreement under seal he would look only to the mortgaged premises for payment of the notes, in case they were not redeemed from his foreclosure, was a valid, binding contract between them, and is a bar to this suit. Story on Notes, sec. 408 (5) ; 2 Greenl. Ev., secs. 516, 526 ; *Follett* v. *Eastman*, 16 Vt. 19 ; *Gilson* v. *Gilson*, 16 Vt. 464 ; 2 Pars. Cont. 194, 195. Such an agreement may be proved by parol. *Crosby* v. *Wyatt*, 10 N. H. 324 ; *Bank* v. *Woodward*, 5 N. H. 107, 108 ; Chit. Cont. 105, 106 ; 2 Pars. Cont. 67. The defendant is likewise released, upon the ground that the original contract has been varied without his consent. *Watriss* v. *Pierce*, 32 N. H., and authorities cited.

Green has foreclosed the mortgage, and has got his pay in that way. He is estopped to deny that he made an entry upon the mortgaged premises for the purpose of foreclosure, after publishing a notice to that effect, upon which the defendant relied and acted. 1 Greenl. Ev., secs. 22, 27, 207 ; *Strong* v. *Ellsworth*, 26 Vt. 366, 173 ; *Watson* v. *Threlkeld*, 2 Esp. 637. At all events, it would have been

competent for a jury to have found the fact of such an entry upon the testimony introduced by the defendant. The verdict in his favor being by consent, such fact will be assumed. *Melcher* v. *Flanders,* 10 N. H. 139. The object of the plaintiff's entry and possession plainly appears from the published notice of the foreclosure. The language of the notice is, "That on the 5th day of August, A. D. 1856, I took quiet possession of the premises, by entering on the same. I therefore claim a foreclosure of said mortgage, for condition broken." This is a substantial compliance with the law. Laws of 1854, ch. 1532, sec. 1. Horner never had any actual possession of the mortgaged lands, except through his partner, Hastings, and his co-tenants, Paine and Hastings. Paine and Hastings surrendered the lands to Green. This binds Horner, and is as good for the purpose of a foreclosure as an actual personal possession by the plaintiff would have been. *Bellows* v. *Stone,* 14 N. H. 175, 198. Green, having entered upon the mortgaged premises, is presumed to have entered claiming according to the extent of his title ; and such entry gave him constructive possession of all the land covered by his title. *Riley* v. *Jameson,* 3 N. H. 25, 26 ; *Tappan* v. *Tappan,* 31 N. H. 53. The testimony for the defendant shows that neither of the mortgagors, nor any party to the notes in suit, has ever interfered with the plaintiff's possession of the mortgaged premises since his entry thereon. The plaintiff has always paid the taxes, and through Paine, his tenant, has had the actual occupation of them one winter since then. We submit that Green's possession of these mortgaged lands has been long enough to accomplish a foreclosure. *Brown* v. *Cram,* 1 N. H. 171 ; *Gilman* v. *Hidden,* 5 N. H. 30 ; *Downer* v. *Clement,* 11 N. H. 40 ; *Kittredge* v. *Bellows,* 4 N. H. 433.

BARTLETT, J. The second mode of foreclosure provided by our statute (ch. 1531, sec. 1) is, "by peaceable entry into the mortgaged premises, and continued, actual, peaceable possession thereof for the space of one year, and by publishing in some newspaper," as specified in the act, "three weeks successively, a notice stating the time at which such possession taken for condition broken commenced, the object of such possession," &c., "the first publication to be six months before the right to redeem would be foreclosed." The notice of November, 1856, so far from stating the time at which the possession taken for condition broken commenced, does not state that possession was ever taken for condition broken, and it does not show that the object of the possession was a foreclosure of the mortgage. These defects are not supplied by its statement that Green then claimed a foreclosure of the mortgage for condition broken, because of his alleged taking of quiet possession on the 5th of August; for it is not to be inferred from the fact of the claim that it was well founded, or that he took possession for condition broken, and for the purpose of foreclosure. *Morrison* v. *Day,* 37 Me. 388. As there was not competent evidence of the publication of notice, according to the statute, the jury could not legally have found a foreclosure. An agreement by the plaintiff with Paine and

Hastings, in consideration of their executing to him the instrument purporting to put him in quiet possession of the mortgaged premises, and containing their covenant not to enter thereon or permit others to enter without his consent, until they should have fulfilled the condition of the mortgage, and that the plaintiff would, if the lands were not redeemed within a year from the commencement of his foreclosure, look to them only to pay the notes, would not seem to operate as a satisfaction of the debts, any more than would a covenant not to sue. Story on Notes, sec. 409. It furnishes here no evidence of payment, being at most but an unexecuted agreement that the plaintiff would take the lands in payment, for his title has not become absolute; and therefore the evidence fails to show that the lands were received in satisfaction of the debts. We do not think the jury could have properly found a satisfaction of the debts by reason of the transaction of August 5, 1856. The only thing received by the plaintiff was the instrument executed by Paine and Hastings; and there is no evidence that this, or their attempted surrender of possession by means of this, with their covenant not to enter or permit others to enter, &c., was received in satisfaction of the notes. On the contrary, by the terms of the agreement the notes, if not otherwise satisfied, were still to be paid by the lands. 2 Pars. Cont. 194; *Woodward* v. *Miles*, 24 N. H. 294. Nor could this agreement avail the defendant by way of estoppel, for he was neither party nor privy to it. Co. Lit. 352, a; Com. Dig., Estoppel, c. It becomes unnecessary to inquire whether any of the evidence offered to show a foreclosure was objectionable on other grounds. This verdict was taken by consent, expressly subject to the exceptions stated in the case, and, therefore, although there was conflicting testimony upon some other points, we have not felt called upon to examine them at this time. The verdict must be set aside and a

*New trial granted.*